

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-15-00078-CV

_____

TOCHRIL, INC., Appellant

V.

TEXAS WORKFORCE COMMISSION, Appellee

On Appeal from the 53rd District Court
Travis County, Texas
Trial Court No. D-1-GN-09-001957

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Tochril Incorporated provides healthcare related services, including—while operating as Health Force Medical Staff Relief—the provision of as-needed registered nurses, licensed vocational nurses, and certified nurse assistants to local health care institutions.

Tochril sought from the Texas Workforce Commission (TWC) a refund of certain taxes that had been paid under protest pursuant to the Texas Unemployment Compensation Act (Act).[1] Tochril asserted that the workers, who had been classified by TWC as Tochril employees for tax purposes, were actually independent contractors and, therefore, that there was no reason to charge Tochril unemployment taxes on their remuneration. The TWC filed a successful motion for summary judgment on this issue.

On appeal,[2] Tochril argues that the trial court erred in sustaining the TWC's objections to Tochril's summary judgment evidence and in granting the TWC's motion for summary judgment. Even assuming Tochril's summary judgment evidence should have been considered admissible, we find that the TWC was entitled to summary judgment because Tochril's workers were employees under the Act. Therefore, we affirm the trial court's judgment.

"Courts review decisions of the Commission regarding unemployment benefits de novo to determine whether there is 'substantial evidence' to support the decisions." *Tex. Workforce*

---

[1]TEX. LABOR CODE ANN. § 201.001 (West 2015).

[2]This administrative matter was originally filed in Travis County and was originally appealed to the Third Court of Appeals in Austin, but this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Third Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

*Comm'n v. Harris Cty. Appraisal Dist.*, No. 14-14-00631-CV, 2016 WL 1267893, at *6 (Tex. App.—Houston [14th Dist.] Mar. 31, 2016, no pet.) (quoting TEX. LABOR CODE ANN. § 212.202 (West 2015)); *see* TEX. LABOR CODE ANN. § 213.073(c) (West 2015); *Chawla v. Tex. Workforce Comm'n*, No. 03-10-00327-CV, 2012 WL 3629460, at *2 (Tex. App.—Austin Aug. 22, 2012, pet. denied) (mem. op.). "Therefore . . . the specific question before the district court was whether the TWC proved as a matter of law that substantial evidence supported the decision." *Chawla*, 2012 WL 3629460, at *2.

"The Commission's action is presumed valid, and the party seeking to set aside the decision has the burden of showing that it was not supported by substantial evidence." *Harris Cty. Appraisal Dist.*, 2016 WL 1267893, at *6. Evidence may preponderate against the decision of an agency, yet still amount to substantial evidence. *Id.* "Substantial evidence need only be more than a scintilla." *Id.* Because this case comes to us on summary judgment, we determine de novo whether the summary judgment evidence established as a matter of law that substantial evidence supported the Commission's decision. *Id.* (citing *Blanchard v. Brazos Forest Prod., L.P.*, 353 S.W.3d 569, 573 (Tex. App.—Fort Worth 2011, pet. denied); *Chawla*, 2012 WL 3629460, at *2; *see Critical Health Connection, Inc. v. Tex. Workforce Comm'n*, 338 S.W.3d 758, 762–63 (Tex. App.—Austin 2011, no pet.)).

For purposes of the Act,

"employment" means a service, including service in interstate commerce, performed by an individual for wages or under an express or implied contract of hire, unless it is shown to the satisfaction of the commission that the individual's

3

performance of the service has been and will continue to be free from control or direction under the contract and in fact.

TEX. LABOR CODE ANN. § 201.041 (West 2015). Also,

> "employer" means an employing unit that: (1) paid wages of $1,500 or more during a calendar quarter in the current or preceding calendar year; or (2) employed at least one individual in employment for a portion of at least one day during 20 or more different calendar weeks of the current or preceding calendar year.

TEX. LABOR CODE ANN. § 201.021 (West 2015). "[A] temporary help firm[3] is the employer of an individual employed by the firm as a temporary employee."[4] TEX. LABOR CODE ANN. § 201.029 (West 2006).

To determine whether a person is an employee, the TWC "uses a multi-factor test derived from the common law" codified in Title 40, Part 20, Chapter 821 of the Texas Administrative Code. 40 TEX. ADMIN. CODE § 821.5 (2015) (Tex. Workforce Comm'n, Employment Status: Employee or Independent Contractor); *Harris Cty. Appraisal Dist.*, 2016 WL 1267893, at *6. As set forth in Section 821.5 of the Texas Administrative Code, "A worker is an employee if the purchaser of that worker's service has the right to direct or control the worker, both as to the final results and as to the details of when, where, and how the work is done." *Harris Cty. Appraisal Dist.*, 2016 WL 1267893, at *6 (citing 40 TEX. ADMIN. CODE § 821.5). "Control need not actually

---

[3] "'Temporary help firm' means a person who employs individuals for the purpose of assigning those individuals to work for the clients of the temporary help firm to support or supplement a client's work force during employee absences, temporary skill shortages, seasonal workloads, special assignments and projects, and other similar work situations." TEX. LABOR CODE ANN. § 201.011(21) (West 2015).

[4] "'Temporary employee' means an individual employed by a temporary help firm for the purpose of being assigned to work for the clients of a temporary help firm." TEX. LABOR CODE ANN. § 201.011(20) (West 2015).

4

be exercised, however; if the service recipient has the right to control, employment may be shown."

*Id.*

> Factors indicating employment include:
>
> (1) whether the worker receives instructions about when, where, and how the work is to be performed; (2) whether the worker receives training by a more experienced worker or whether the worker is required to attend meetings or take training courses; (3) whether the worker's services are integrated, as the services of an employee are usually merged into the remunerating entity's overall operation; the entity's success depends on those workers' services; (4) whether the worker renders services personally, as employees do not hire their own substitutes or delegate work to them; (5) whether hiring, supervising, and paying helpers is done by the entity; (6) whether there is a continuing relationship, either month after month or year after year; (7) whether the entity sets hours of work, either during hours and days or "on call"; (8) whether working full time is required; (9) whether the entity has a right to mandate the location where services are performed; (10) whether the order or sequence of services are set by the entity; (11) whether submission of oral or written reports is required; (12) whether payment is by the hour, week, or month; (13) whether the entity pays business and travel expenses; (14) whether tools and equipment are furnished; (15) whether the worker has a significant investment in the business, as an employee typically does not; (16) whether the worker realizes profits or losses in the business; (17) whether the worker is permitted to work for more than one firm at a time; (18) whether the worker makes services available to the public; (19) whether the worker may be discharged at any time without liability; and (20) whether the worker may quit at any time without liability.

*Id.* (citing 40 TEX. ADMIN. CODE § 821.5); *see Critical Health Connection, Inc.*, 338 S.W.3d at 766.[5] "Depending on the type of operation and the services performed, not all factors may apply." *Harris Cty. Appraisal Dist.*, 2016 WL 1267893, at *6 (citing 40 TEX. ADMIN. CODE § 821.5). "The weight assigned to a specific factor may vary depending on the facts of the case." *Id*. "If an

---

[5]To the extent Tochril's summary judgment evidence creates a fact issue on individual factors, we will find those factors to be favorable to Tochril.

employment relationship exists, it does not matter that the employee is called something different, such as agent, contract laborer, subcontractor, or independent contractor." *Id*.

Tochril is a provider of healthcare related services. According to its petition, one of Tochril's "business segments," doing business as Health Force Medical Staff Relief, provides registered nurses, licensed vocational nurses, and certified nurse assistants "with opportunities for contract work assignments at leading healthcare institutions." The summary judgment evidence established that nurses fill out an application with Tochril, nurses are required to pass a drug test conducted at Tochril's expense, registered nurses and vocational nurses are required to pass medical/surgical screening and other proficiency examinations administered by Tochril, Tochril runs yearly background checks on the nurses, Tochril's clients complete performance evaluations of the nurses, and Tochril obtains workers' compensation coverage for the nurses. Additionally, Tochril's client contracts include the following statements:

- "The agency will use its best efforts to first fill all assignments hereunder with nurses employed by the agency"
- "The agency shall maintain a complete personnel file on each nursing personnel, which will include a resume, work history, proof of current licensure, two professional references, a skills checklist, proof of required minimum experience, health screening report, proof of biannual CPR/BCLA certification, record of in-service education, results of substance abuse screening, . . . criminal background and exclusions check, and proof of facility orientation."
- "All staffing personnel referred to the facility, pursuant to this agreement, will be considered [Tochril's] employees only."
- Tochril "will assume sole and exclusive responsibility for payment of wages to its personnel for services to the facility."

The evidence also showed that Tochril signs "Independent Contractor Agreements" with its nurses, nurses have discretion to "work when they want, if they want, and where they want," Tochril does not provide any training to the nurses, nurses do not spend much time at the Tochril office, nurses

can work for other companies or hospitals, Tochril does not direct nurses how to do their jobs, Tochril does not pay for their licenses, and Tochril does not provide transportation or reimburse nurses for travel or business expenses.[6]

Tochril argues that the TWC mischaracterized approximately 600 nurses as employees instead of independent contractors for purposes of unemployment tax liability and forced Tochril to pay miscalculated unemployment taxes under protest from October 1, 2005, through September 30, 2008.[7] The TWC takes the position that Tochril is a temporary help firm, that the nurses are temporary employees, and that this case must fall in line with the Third Court of Appeals' decision in *Critical Health Connection*, which held that temporary help firms are employers for tax purposes. We agree that *Critical Health Connection* is on point and good authority here.

Critical Health Connection, Inc. (CHC), was a medical staffing company that maintained a registry of medical service providers, primarily nurses, whom it referred to client hospitals and nursing homes in order to fulfill their short-term staffing needs. *Id.* at 759. Like Tochril, CHC argued that these providers were independent contractors because they were not required to accept

---

[6]Tochril also attached the un-notarized declarations of several nurses claiming that they were independent contractors, and not employees. TWC deposed some of the nurses who signed these documents. Several indicated that they signed the declarations because they were instructed to do so by Tochril. One nurse testified that she had to fill out the declaration to continue accepting assignments with Tochril.

[7]In its response to the summary judgment motion, Tochril argued that the IRS and Department of Labor's prior audits of the company concluded that the nurses were independent contractors for purposes of Section 530 of the Revenue Act of 1978, as amended by Section 1122 of the Small Business Job Protection Act of 1996. It also argued that, in 2009, the TWC Appeal Tribunal had previously determined that three nurses were not entitled to unemployment benefits because they were independent contractors. TWC responded that it, not the IRS or DOL, is charged with implementing the Act, and that prior inconsistencies related to whether nurses were entitled to unemployment benefits were not relevant because (1) Section 213.073 cases require trial de novo and (2) appeal of TWC Appeal Tribunal decisions were to the TWC, which would have rendered a final decision had those cases been appealed.

7

shifts when offered and were paid on an hourly basis according to the rates negotiated by CHC and the provider.[8]  *Id.* at 759–60.  Following cross-motions for summary judgment, the trial court determined that the providers were employees, not independent contractors.  The Third Court of Appeals affirmed the trial court's decision after reviewing the factors set forth in Section 821.5 of the Texas Administrative Code.

The summary judgment evidence in this case establishes that this case is virtually identical to *Critical Health Connection*, which determined that CHC had delegated the right to control to its clients.  Much like the facts in *Critical Health Connection*, the Section 821.5 factors here demonstrated these facts:

(1)　(a)　Tochril informs the nurses of the location, times, and the hourly rate of pay for an available shift,

(b)　once the shift is accepted, the terms of the shift cannot be varied without Tochril's preapproval, and

(c)　Tochril's client provides instructions on the details of the work assignment when the nurse arrives;[9]

(2)　nurses receive no essential job training from Tochril or its client facilities, aside from an orientation from the clients regarding protocols, rules, and equipment, at Tochril's expense;

(3)　the nurses' services are fully integrated into Tochril's overall operation in that the company's success depends on their services;

(4)　the nurses' services must be rendered either personally or through a subcontract with another Tochril nurse;[10]

---

[8]CHC, like Tochril, was paid based on a markup passed on to its clients.  *Id.*

[9]The TWC's decision found that Tochril delegated the right to control or direct the nurses to its clients.

[10]While one nurse testified that he had heard of other nurses hiring helpers, many of the nurses deposed testified that they had never hired helpers and were unaware that they had the option to do so.

8

(5) (a) Tochril negotiates the rate of pay for the nurses with its clients, and

(b) Tochril will not pay nurses who subcontract their work to other nurses unless the subcontract is with another Tochril nurse;

(6) although the nurses sign contracts with Tochril that, on occasion, can last up to two years, they are typically hired to do one job of limited duration, have no expectation of continuing work, and do not sign a contract for each job;

(7) the nurses can accept or decline a shift, but the times of the shift are dictated by the client;

(8) nurses are not required to devote full-time service to Tochril or any of its clients, but some nurses work between thirty-six and sixty hours per week for Tochril or its clients during a typical week;

(9) nurses can accept shifts at locations of their choosing, but are obligated to work at the location specified by the client if the shift is accepted;

(10) Tochril's clients provide guidelines and instructions that nurses follow, but the nurses exercise professional discretion in performing the work assigned to them;

(11) nurses submit written reports of patient care and a time log, signed by the client and submitted to Tochril, for every shift they accept;

(12) Tochril pays the nurses by the hour and provides holiday pay and incentives for recruiting other nurses;

(13) Tochril does not reimburse nurses for travel expenses;

(14) (a) nurses furnish their own scrubs, shoes, stethoscopes, blood pressure cuffs, and pill cutters,

(b) Tochril's clients provide name badges for the nurses that contain Tochril's name, and

(c) Tochril's clients provide the other essential tools and equipment;

(15) nurses are financially dependent on Tochril and have no significant financial investment in the business;

(16)    nurses do not realize any of Tochril's profits or losses;

(17)    nurses are permitted to work for other staffing referral agencies while accepting shifts from Tochril, but Tochril penalizes clients who hire nurses directly;

(18)    nurses are free to work at other agencies;

(19)    Both Tochril and the client are authorized to discharge a nurse if either is not satisfied with his or her performance and will only be obligated to pay for the hours worked by the nurse; and

(20)    nurses may terminate their relationship with Tochril at any time, but could face liability if they have not completed a shift.

As in *Critical Health Connection*, and for the reasons stated therein, factors 1, 2, 3, 7, 9, 10, 11, 12, 14, 15, and 16 favor a finding that the nurses are employees, and factors 5, 13, 19, and 20 are not particularly relevant or dispositive. *Id.* at 766–67, 768 n.8. Our review of Tochril's summary judgment evidence leads us to conclude that a fact issue was created only on factors 4, 6, 8, 17, and 18, which favor a finding that the nurses are independent contractors. *Id.* at 766–67, 768 n.8. Although fact issues were created on five of the twenty factors and "courts review the facts when conducting a substantial-evidence review, determining whether substantial evidence supports the TWC's decision is a question of law." *Chawla*, 2012 WL 3629460, at *2. We conclude that Tochril, like CHC, was the nurses' employer for tax purposes because (1) a substantial majority of relevant factors indicated that the nurses were employees, and (2) it fell into the category of a temporary help firm. Accordingly, because TWC proved as a matter of law that substantial evidence supported their decision, the trial court's summary judgment was proper. *See Critical Health Connection, Inc.*, 338 S.W.3d at 768.

10

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     April 20, 2016
Date Decided:       June 17, 2016